[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The parties intermarried on September 6, 1978, at Philadelphia, Pennsylvania. The court has jurisdiction as the plaintiff has satisfied CT Page 6243 the residency requirement, and all statutory stays have expired. There are two children from this union, one of whom is a minor. She is Charnee, born March 6, 1989. The evidence indicates this marriage has irretrievably broken down. Judgment may enter dissolving the marriage.
The plaintiff is 44 years old. She reports her health to be good although she is being treated for anemia and high blood pressure. She graduated from LaSalle University with a B.A. degree and certificate in Special Education. She also obtained an Associate's degree in electrical engineering from Champlain College in Vermont. In addition to being a mother and homemaker, she worked at various jobs on a part-time basis during the marriage.
The defendant, age 45, enjoys good health. He holds a B.S. degree in business administration from Temple University and a M.B.A. from LaSalle University. He recently commenced employment as vice president of human relations with the Snapple Beverage Group. He has been gainfully employed during the entire marriage. The defendant, in his determination to move up the corporate ladder, changed jobs on several occasions. Each change resulted in the improvement of the financial position of the family. The price paid for this, however, was the parties and their children were required to move four times and relocate throughout the United States from California to Connecticut.
The parties are both bright, articulate and pleasant young people. Together they struggled to get educations, find success financially and raise a family. They succeeded in their efforts. Today, their long relationship is officially terminating, and that is regrettable.
The evidence indicates and the court finds that the defendant must bear the major responsibility for the failure of this marriage. A detailed recitation of the details leading to this conclusion would serve no useful purpose.
The court has carefully considered the criteria set forth in General Statutes Sections 46b-56, 46b-62, 46b-81, 46b-82 and 46b-84 in reaching the decisions reflected in the orders that follow.
(1) The parties shall share joint legal custody of the minor child Charnee. Residential custody shall be with the plaintiff. The defendant shall have liberal and flexible visitation rights. In the event the parties fail to agree regarding access to the child, either may petition the court to define the defendant's visitation rights.
(2) The parties shall continue to own the marital home at 760 Den Road, Stamford, Connecticut as tenants in common without the right of CT Page 6244 survivorship. The plaintiff shall have exclusive possession of the property and may live there with the minor child until sale, which shall occur upon the happening of the first of the following events:
a. The plaintiff's voluntary decision to sell the real estate;
b. The minor child's graduation from high school;
 c. The plaintiff's remarriage or her living together in the marital residence with an unrelated adult male.
Upon the sale of the home, the parties shall each be entitled to 50% of the net proceeds of sale, and each shall be responsible for 50% of any taxes assessed by reason of the sale. "Net proceeds of sale" means the gross sales price less outstanding mortgages or liens encumbering title for which the parties are jointly liable, except the current home equity loan, real estate commissions payable in connection with the sale, costs of closing, including a reasonable attorney's fee and customary adjustments.
At the time the property must be sold or any time prior thereto, the plaintiff may purchase the defendant's interest based on the fair market value at the time of election. The buyout shall be determined by applying the same definition of "net proceeds of sale" used in a sale to a third party.
The court reserves jurisdiction over any issues involving the property during the period of the plaintiff's exclusive possession including disputes in reference to the sale.
(3) The plaintiff shall retain sole ownership of the following assets which are in her possession free and clear of any claim thereto by the defendant:
A. First Union Bank accounts (sole and joint);
B. Ameritrade Account;
C. GE S and SP program;
D. Swift Investment Club;
E. Merrill Lynch individual IRA;
F. 2001 BMW automobile. CT Page 6245
(4) The defendant shall retain sole ownership of the following assets which are in his possession free and clear of any claim thereto by the plaintiff:
A. People's Bank checking and savings accounts;
B. Prudential Realty Deposits;
C. 2000 Corvette automobile;
D. 1996 GMC Suburban automobile
(5) The parties shall equally divide the First Union Bank joint CMA account in accordance with the balance of $18,208 as listed on the defendant's financial affidavit.
(6) The defendant shall transfer to the plaintiff by way of a Qualified Domestic Relations Order 50% of the current accrued benefit of his General Electric pension.
(7) The defendant shall assign to the plaintiff a 50% interest in the Merrill Lynch and Guardian Individual Retirement Accounts currently in the defendant's name.
(8) The defendant shall transfer to the plaintiff a 50% interest in the T. Rowe Price Savings and Stock Plan and Excess Savings Plan as well as the Prudential SEP account that are currently in his name. The transfers shall be made by assignments if permitted, or, if required, by Qualified Domestic Relations Orders.
The court retains jurisdiction to modify paragraphs 6, 7 and 8 of the judgment to ensure compliance with federal and/or state law relating to retirement/pension benefits.
(9) The Pfizer Deferred Compensation asset is awarded to the defendant. The defendant shall pay to the plaintiff the sum of thirty-five thousand ($35,000) dollars for her equitable interest therein when the marital residence is sold.
(10) The defendant is the owner of Pfizer vested stock options. He held 73,000 options. The week before this trial commenced he exercised 17,950 options and sold the securities, and the proceeds, $398,612 were placed in the Merrill Lynch Brokerage account. The remaining 55,050 options are still under his control.
The net after taxes value of the proceeds of sale and of the remaining CT Page 6246 options shall be shared equally by the parties. This order shall be implemented in the following manner:
 (A) From the proceeds of sale, $398,612, the defendant shall authorize Merrill Lynch to withhold and pay to the Internal Revenue Service the estimate of the taxes due on this transaction. The remaining balance shall be equally divided between the parties.
 (B) The plaintiff is awarded an equitable interest in 50% of each grant of the remaining 55,050 options (27,525 options). The defendant shall hold title to the plaintiff's interest as a constructive trustee and shall exercise her options per her instructions and turn over the proceeds of sale after withholding estimated taxes.
When the Federal and State income tax returns are prepared for calendar year 2002 and any calendar year thereafter when options awarded to the plaintiff are exercised, if the amount of taxes withheld was either over or understated, the parties shall make the appropriate adjustments. The purpose of this order is to assure that the parties' net shares are equally divided. When all income taxes are accurately computed as to the sale of the options, the intended result is that the plaintiff shall receive 50% from the sale net of the actual taxes imposed on the transfer computed as of the date of the year of filing of the return for the year the exercise took place.
(11) The parties shall equally divide the $4162 income tax refund when received.
(12) The defendant has requested some items of personal property as listed on Schedule A which is attached hereto.
The defendant is awarded all items requested except the following which shall remain the property of the plaintiff:
A. Artwork
 #2. Either cello or two abstracts (living room) at the option of the plaintiff;
 #4. Church Lady and Last Supper with black heroes.
B. Miscellaneous Items
 #1. Oak wall units — large or small with smoke glass doors;
#5. Chairs and ottoman (black) — 2 office CT Page 6247
C. Media Room
 #2. High smoke glass table (4 chairs)
#3. Stereo.
All items shall be transferred within 30 days. At the plaintiff's option she may have them delivered to the defendant or permit the defendant to remove them.
(13) Each party shall be responsible for her and his own liabilities including attorney's fees.
The defendant shall be solely responsible for the payment of the entire balance due on the home equity loan currently outstanding.
If the defendant elects to restructure the monthly loan payments to the extent of the current balance only, the plaintiff shall cooperate in executing documents required by the lending institution to accomplish this. However, any balance due at the time the residence is sold shall be paid by the defendant.
(14) The following order is based on the defendant's annual salary of $224,000.
The defendant shall pay to the plaintiff as periodic unallocated alimony and child support the sum of eight thousand ($8,000) dollars per month. The payments shall commence on June 1, 2002 and the first day of each month thereafter, in advance. They shall continue during the defendant's lifetime until the death of the plaintiff, her marriage, cohabitation as defined by General Statutes, Section 46b-86 (b) or May 31, 2012, whichever event first occurs.
A contingent wage withholding order may enter,
Based on the net weekly income of the defendant, the child support guidelines do not apply. The coordination of total family benefits meet the needs of the minor child in excess of the presumptive support order of $383 per week.
(15) As long as the minor child attends private school, each party shall contribute equally to the costs of tuition, fees and tutors.
Each party shall pay one-half of the fees for summer camp for their daughter. CT Page 6248
(16) As security for his support obligations the defendant shall maintain a life insurance policy with a face amount of $500,000 naming the plaintiff as beneficiary, so long as the defendant is obligated to pay alimony. Thereafter, the minor child, Charnee, shall be named as beneficiary so long as the defendant is obligated to pay child support.
This order may be modified upon showing of a substantial change in circumstances.
(17) As an assignment of property, the defendant shall maintain a life insurance policy with a face amount of $150,000 naming the plaintiff as beneficiary.
Both life insurance policies shall be unencumbered. The defendant shall annually provide the plaintiff with proof of coverages.
(18) The defendant shall maintain medical and dental insurance for the benefit of the minor child for as long as he has a support obligation. The defendant shall provide the plaintiff with a description of the insurance; the names of the insurance companies; and the policy numbers. He shall promptly provide all documents required for the presentation of claims on behalf of the child. Section 46b-84 (e) of the General Statutes shall apply.
The parties shall equally be responsible for one-half of all uninsured and unreimbursed medical and dental expenses for the child.
(19) The plaintiff shall have the right to convert her medical insurance under the defendant's employment through COBRA at her sole cost and expense.
Judgment may enter accordingly.
NOVACK, J.T.R.
 SCHEDULE A
Artwork
1. Woman abstract (foyer)
2. Cello or 2 abstracts (living room)
3. Cotton Club (master bedroom) CT Page 6249
4. Church lady and Last Supper with black heroes (family room)
5. Basketball picture
Miscellaneous Items
1. Oak Wall units-large (open) or small with smoked glass doors
2. Snow blower (large)
3. Deck set and umbrella (tan)
4. Tools
5. Chairs Ottoman (black) — 2 office
6. African masks
7. Bench (hallway)
8. African chair
9. Book rack
10. 36" Sony TV
Home Gym
1. Nautilus weights
2. Chrome hand weight set
3. Life cycle
4. Ceiling Mount TV (15" white)
5. Sony Wall CD Stereo (new)
6. Dip Machine
Bedroom
1. Bedroom set (pecan)
2. Queen armoire, dresser, mirror (no night stands) CT Page 6250
Guest Bedroom
1. G mom twin beds
Media Room
1. Gray taupe leather sectional
2. High smoke glass table (4 chairs)
3. Stereo
4. TV
5. Dishwasher disc player
6. VCR
7. DVD
8. Total stuff etc.
9. Contemporary sculpture light
10. Musical notes wall artwork